The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons who have any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, I admonish you to draw a knight and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning, ladies and gentlemen. Welcome to the Fourth Circuit. Judge Diaz and I are thrilled to be joined today by our colleague from beautiful downtown Irmo, South Carolina, Judge Shedd. Good morning, Judge Shedd. Good morning. Wish you were here. Well, so do we. The weather has to be better. And I think counsel have already been briefed that if Judge Shedd has a question, which is entirely likely, then he will be raising his hand and you should take the question from Judge Shedd when you see that, if I don't see him first. So that said, we'll hear argument in our first case, Carson v. Manor Care, Mr. Herlock. We'll be glad to hear from you. Good morning. May it please the Court, my name is William Herlock and I have the privilege of representing Mr. Carson, who is here with us this morning in this very important matter in which we come before the Court to correct a procedural wrong that occurred in this particular case. As many of us know, Mr. Carson filed his suit against the appellate defendants under the Federal False Claims Act as well as under certain of the State False Claims Act in addition to filing a wrongful termination act under Section H of the False Claims Act. Mr. Carson was the only individual, forgive me, Mr. Carson filed that complaint in September of 2011 after making his pre-suit disclosures to the U.S. Attorney's Office in July of 2011. Mr. Carson was the only individual to file claims on behalf of the States in this particular matter. On June 13, 2012, the District Court, under direction and request by the government, consolidated these actions, first Mr. Carson's case with another False Claims Act case and then subsequently with a second False Claims Act case. A third, the three actions, if you will, were consolidated with the government. In April of 2015, the United States government filed a consolidated complaint and intervention of the consolidated matter. Certain of those allegations contained in that complaint were only found in Mr. Carson's complaint and indeed he is an actual party to that complaint that is pending in the District Court as we speak. Whole sections of that complaint, particularly modalities, diathermy, ultrasound, electric simulation, contained in paragraphs 43 through 45 of that complaint are only in there because of Mr. Carson. How is that materially different from the other complaints that was filed? Yes, Your Honor. We believe it's material difference for several reasons. First off, this is not just a, there's been quite a bit of back and forth as to general allegations of overcharging. This had to do with a specific aspect that included patient harm, which was nowhere found in any of the other complaints, Your Honor. In addition, Mr. Carson's complaint was the only one to identify TRICARE dollars that were implicated in these particular schemes that were put forward. So we would argue that those are material differences under the various case law that has been out there in terms of a difference as to first to file in this particular case. In addition- Those are just, it seems to me, just factual details regarding the same fraudulent scheme. So how does that, I mean, why isn't it appropriate to dismiss the case based on first to file if all you're doing is supplementing or expounding upon the original scheme as first defined in these earlier pleadings? And I think, Your Honor, there's a couple of nuances there that we must also remember as regards to, and I'm assuming that Your Honor is talking about the federal claims because the state claims- No, right. There is no first to file if we can agree to that. As well as Mr. Carson need not even file an H claim, need not even file a false claims act complaint to sustain an H claim under the rules. In fact, I believe there's case law in this particular circuit wherein an individual didn't even have a count for an H claim, however, had wrongful termination allegations contained in their complaint and their complaint was allowed to go forward. But taking it a step back for a second to get to your question, Your Honor, we believe a general allegation that's been put out there, whether it be first to file or newspaper report if we're talking about public disclosure, there needs to be much more specificity. To say that there's been an overbilling charge would eviscerate the False Claims Act statute going forward with other relators who bring pertinent information as Mr. Carson, we believe, did here in terms of other schemes that have been perpetuated with regards to what was which also have a patient component harm, which I believe is an important component that we're talking about here in addition to the overcharges and the wrongful handing in a claim under the False Claims Act. No one else touched on the patient harm. Have our cases or any other circuit cases made the sort of distinction that you're trying to make here with respect to first to file a contention that adding meat to the bones of a key TAM action is sufficient to avoid the first to file bar? Yes, there were several complaints. There are decisions actually particularly in this circuit in Busham where it had to do with the security services in Afghanistan and there were general overcharges that were occurring much like here and there were specific allegations that were allowed to go forward on a first to file basis in regards to first, was there overlap because there's always the general rubric of an overcharge so that tunnel is too large, if you will, to put everything through, we believe. In that particular case, there were two particular schemes that were put forward. One had to do with weapons and another had charges for overcharges for weapons and the other one had to do with billeting or housing of security personnel and the court here actually allowed the second part of those allegations, if you will. There was a comparison that was done, which quite frankly hasn't been done in this case because we never really got past the first to file question. Mr. Herlock, let me ask you a question. I haven't heard you answer Judge Diaz's questions directly as I would like so let me ask you this way. What is the least amount of different pleading that we would find in a third case to be filed after you that you would think would not be barred by the first to file rule? You understand my question? I do, Your Honor, and I apologize. What's the smallest incremental allegation that could be in a third complaint that you would think would not be barred? I want to see what your theory is about that. I apologize to Judge Diaz if I haven't responded directly to your question. That was not my intention at all. What I would be looking for in a later filed complaint after us, Your Honor, would be quite frankly if there were allegations of the nature that we saw with Mr. Carson, where we are talking about specific treatments. We're not just talking about charging for unnecessary services. We're not just talking about charging for service. No, no, no, but you aren't answering. You're answering and you're explaining what you're not saying. You mean if there was one other allegation of one other overcharge, that would be enough? One factual overcharge, would that be enough? If there were a group of concurrent therapies, much like we have here with these modalities, where we have three ... That's not what ... I didn't ask you that. Let's just walk through it this way. Could a third person after the two of you, you being the second filer, could a third filer file with just one additional allegation or different allegation of one specific overcharge that nobody had mentioned before? Would that be enough to prevent the first file rule from barring that third claim? I would argue that it is, Your Honor, because if you're talking about a different scheme like we are here, whether it be one charge, as Your Honor indicated, or multiple charges, the fact that it's a different scheme ... I'm sorry. Why do you say it's a different scheme? These complaints all seem to be pretty much going down the same road in terms of the things that are alleged against Manor Care as far as this is the type of activity that was undertaken that was fraudulent. You may have a complaint that says, in our particular case, we can name these three patients where this happened. I don't see where that's very helpful. Tell us again what it is that's so substantively different about your complaint. The prior complaint, if you will, has very general topics of the defendant charged for services that were not provided or that they overcharged for services that were provided. It described how that happened. Not in ... quite frankly, not in much detail. The majority of that complaint actually is the caption. There was several. If you really look at the substance of the complaint, this particular complaint, Mr. How is that scheme different than what's described in the first complaint? Because the first complaint just says that they overcharged for services that weren't provided. Well, it looks like to me there's a lot more detail in it than that. I'm sorry? It looks like to me there's a lot more detail in it than that. Actually, having read it several times in preparation for here, none of these modalities are mentioned with the commitment patient harm that is attended to engaging in this type of treatment. In addition, though, I think particularly in this instance, these cases were consolidated. Mr. Carson's modalities, which are found in the consolidated complaint, by the way, that the government filed an intervention but nowhere else but Mr. Carson's complaint, are subsumed, we argue, in the consolidated action where Mr. Carson has been named a party. So the fact that... That's part of your argument that when the government comes in and intervenes and files its consolidated complaint, that saves you from the first to file rule? In this particular instance, we're talking about a very unique situation here in the False Claims Act where we have a case that was unsealed, intervened, and a consolidated complaint was filed. There's a dearth of case law, quite frankly, that addresses this issue. In this particular case, does the government's filing of its consolidated complaint act as a bar, as far as you're concerned, on the first to file claim? Yes, in that Mr. Carson's allegations, if I may put it another way, Mr. Carson's allegations have been subsumed into the consolidated complaint filed by the government with regards to the federal, certain of those federal claims. Yes, Your Honor. Have I responded to that? No. Okay. Go ahead. In addition, some of the other arguments that have been put forward was that somehow Mr. Carson's allegations have been publicly disclosed because... Mr. Herlock. Yes, Your Honor. I want you to go back to my question once again. I heard what you said to Judge Agee. Are you saying that a third complaint would not be subject to the first to file bar if you just mentioned the words separate modality or if you described a modality or a specific example of a modality that hadn't been described in the first two complaints? What's the smallest amount under your theory that is needed to establish a claim that can proceed in the third instance? You're the second instance. I'm talking about one to follow you. What would somebody have to plead in that complaint to be able to have an ongoing third suit? What's the least amount different they have to assert? In that instance, Your Honor, I would suggest that there would have to be a separate scheme, if you will. So if they come back and say treatment X, Y, and... No, no, no. No, no, no. So your answer is you have to assert a different scheme? Correct, Your Honor. And how do you define a... What's the smallest difference that defines a separate scheme? I would argue that the smallest difference is literally uncovering another vain source, however we want to categorize it. Of what? Potential claim. Of what claim? Potential claim. Modality? It could be... I'm sorry. What if it... No, but I want... What's the smallest difference? Could it be the assertion that they filed, they billed for a service rendered on a date that wasn't mentioned in the first two complaints? No, Your Honor. Would that be enough? No, sir. I would suggest that it has to be a separate form of treatment, not heretofore mentioned in any of the previous complaints, much that we have here. So in other words, you would say if there's a scheme about false billings, you could file separately and successively as long as you assert that it was false billings for a different type of service? I would... Yes, Your Honor. Because remember then, everything then, if a company has an article out there or something in one of the enumerated sources or in a prior complaint that was filed that says you're overcharging for services, then everything is encompassed in that. And I would argue that that's too broad and that's not what the Act tries to capture. The Act tries to capture exactly what happened here where different schemes were identified by Mr. Clark. And your service, and you think you qualify not to be barred because, tell me again, what is the different service or what you assert that you think makes yours a different case? That in this particular instance, the defendants were using an outside modality, an outside source, health treatment, however we want to characterize it, which consisted of electric stimulation, consisted of these modalities that we're talking about, diathermy was another one, ultrasound was another one. These were all... You mean it's a different type of service? Yes, Your Honor. Yes, Your Honor. That was not heretofore identified. Would each one of those services make a separate established independent suit? One would be for diathermy? If the first two lawsuits hadn't alleged that, then somebody could say diathermy? I think... And that would be a non-barred third suit? I think it could be. However, if you group those modalities together in totality as was done here, I think it's a much stronger allegation and leads credence to the argument that they actually were not identified on a first-to-file basis prior to that, absolutely. If I may continue because I see I'm coming short here. I do want to mention your retaliation claim and the state claims before your time runs out. Thank you, Your Honor. And if perchance you were to lose on the federal claims. And when we talk about losing in the federal claims, I think what we're talking about, just so that we're very specific, is if Mr. Carson's federal claims are knocked out under a first-to-file argument, it has been indicated here, not necessarily that he's precluded from partaking or going forward in the government's consolidated complaint and intervention in which he's named a party. So it would be a kind of a two-part step, if you will. Yes, perhaps there was an issue with first-to-file, however, his allegations are consolidated in the government's complaint, which they are. They're mentioned there. He's mentioned as a party. If I could just quickly, though, touch on those two points that Your Honor just indicated. The district court had dismissed the state claims on a first-to-file basis. We argue respectfully that that was erroneous because no one else filed state claims. There was no other first-to-file before us. In addition, Mr. Carson had pled adequate and satisfactory under the pleading rules of the Federal Rules of Civil Procedure for his H claim because he was engaged in whistleblowing activity. We have that replete in the complaint itself where he talks about meetings. He lists five of them with individuals where he had gone to management. He went to corporate compliance and he brought this to his attention. He uses the word fraudulent. The word fraud is in there. It's not necessary that he go to corporate compliance or management and say, I'm going to file a false claims act if you don't do this or that. The case law is very clear in the circuit on that. As I understand it, the district court's ruling, all of the claims were dismissed on the basis of a first-to-file defense and there was no separate addressing of either the state claims or the retaliation claim under anything else. So even if they went back, the district court could revisit those in the first instance because there may be other defenses that the government or Medicare chooses to raise. I know I'm out of time, Your Honor, if I may respond. Sure. Yes, and in addition to that, there would also be and quite frankly as this court did in the Carter v. Halliburton case where it had overturned the first-to-file decision by the district court and remanded back for an analysis under public disclosure, which is another component here, as well as what Your Honor just indicated for the state claims and for the H claims. And I reserve the balance of my four minutes unless there's another question the court would like to. Thank you very much. Thank you, Your Honors. Mr. Martin. Good morning, Your Honors. James Martin. I may have pleased the court arguing for appellees. Starting with the first-to-file bar, our red brief at pages 15 to 16 makes the comparison between the relator's complaint here and Rivick's complaint, showing that the scheme, if you will, that's alleged in the relator's complaint, in this case Mr. Carson's and Ms. Rivick's as it relates to getting higher RUG classifications, overbilling for therapy, billing for non-skilled services as skilled services, and billing for unnecessary services. Those are the core allegations of fraud in Mr. Carson's complaint. They're the core allegations of fraud in the Rivick complaint. Now turning to the modalities paragraph in particular, 133, the allegations in that paragraph simply add a different mechanism for raising treatment costs, overutilization through the administration of electronic stimulation, ultrasound, or diathermy. In other words, it's a different mechanism for achieving the same fraud that Ms. Rivick alleges. And in the Halliburton case, this court said very clearly that that just adding a different mechanism to the same core allegations of fraud is not sufficient to avoid the first defile bar. The Grinberg case in the Tenth Circuit reflects the same analysis. We also cited the D.C. Circuit. Excuse me. Judge Shedd has a question. Mr. Martin. Yes. I want to ask you the same question I asked of Mr. Herlock, and I think you know what it is. I'm interested to know under your approach and your theory, what do you think is the least different allegation that would suffice to avoid the first defile rule in a subsequent filing? So what we would have to have consistent with Halliburton, Your Honor, is a core allegation of a fraudulent scheme that went beyond getting higher RUG classifications, overbilling for therapy services, billing for non-skilled as opposed to skilled services, or billing for unnecessary services. So what we'd have to do is we'd have to find some kind of fraudulent billing practice that expanded beyond what Ribbick alleged or wasn't fairly within what the government could investigate and find based on Ribbick's allegations. Now as I stand here, relative to these complaints, I'm not sure what that would be. Ribbick's allegations are very comprehensive as to the billing practices of the defendants, and there would have to be some category of classification or service that isn't encompassed there. And as I said, as I stand here, I can't think of what it is. So as you stand here to argue that case right now, you representing Medicare, you're very, very happy that Ribbick pleaded such a broad claim of false claims against Medicare. Well, I think in looking at the purpose of the first to file rule, I am, yes, Your Honor. But I'm not happy about being sued for fraud. But you just see it as if the scheme is laid out, generally described, you have to come up with another scheme or another plan that's not encompassed generally in that. Yes. And I think that's what Halliburton talks about. And remember that the purpose of the rule is to forestall these parasitic actions. So this isn't a circumstance where we're looking for liberality in allowing the later filed complaints. And keep in mind here, the only thing that the motion to dismiss is taking aim at is the amended complaint filed by Mr. Carson after the government's complaint and intervention. There is no allegation or issue raised in this case about what should happen with the government's complaint. We are taking aim only at the later filed complaint that falls squarely within the first to file bar and isn't affected by the government's. Let me ask you a variant maybe of Judge Shedd's question. Let's say the initial complaint, not Mr. Carson's, but the initial complaint had the same allegations it had maybe even some language about modalities. And it covered two of the three most common rehabilitation facility services. So it plotted in terms of physical therapy and occupational therapy. And then there's a later complaint and it adds basically the same cost overrun type methodology for speech therapy. Is that sufficient to avoid the first to file bar? My answer to that would be no, Your Honor, because that would be in the category that Halliburton or Grinberg described as a different mechanism that is speech therapy for accomplishing the same essential core allegation of fraud, which is either the over billing or unnecessary billing. And in looking at the purposes of the first to file rule, since the government could get at those mechanisms based on the allegations that are made in the complaint, there's no need to permit the add-ons and certainly no justification for it. I think that rather to carry out the purposes of the rule, look at the core allegations and if all you're doing is adding a mechanism to them, not going in a completely different direction, then the first to file bar is applicable and as this Court has noted, admits of no exceptions. So as I understand opposing counsel's argument, he contends that even if the first to file bar applies to his complaint, that because some of the allegations are included in the as a participant, even if his complaint goes away. Do you understand that to be his argument and if so, what's your response? Two-fold, Your Honor. He made that argument today and yes, that's the way I understood it. My first response is it's not relevant to the Court's decision on the motion to dismiss, which as I said, is directed only at the amended complaint. Second, what Mr. Carson can or can't do in the government's complaint and intervention, as I also indicated, isn't before this Court. That's a matter for the District Court to determine relative to the government's action as it goes forward and participation is a different issue than being able to file a separate late filed post-intervention complaint. And so on that issue of participation In your view, he would no longer be a relator, he would be something else. He would be somebody in the caption of a complaint and intervention. Where it goes from there is up to the District Court, but as to the amended complaint that was dismissed by the District Court, filed after the complaint and intervention, that is subject to dismissal and the consequences of how he gets to participate in the government's action if he does, that is a question that he hasn't ever briefed or argued here and it is for the District Court to determine that in response to arguments from the government and frankly, the defendant that are covered under the statute's specific provisions that relate to participation, but those haven't been briefed or argued here. If I could turn for a minute to the state claims. Let me say, I want to ask you about just that. Following up in your answer to Judge Agee's question where you said the District Court would be in the best position and that would be up to them to decide the questions about his status were we to agree with you on the first to file bar. Well, if we agree with you on the first to file bar as to the main Federal False Claim Act issue, why wouldn't we send everything else back and let the District Court, as you suggest, in another situation, let the District Court deal with all that first as to any other, I think Judge Agee said it earlier, potential defenses, fact-finding determinations. Why wouldn't we just send all that back? So let me start with the proposition that I agree that the District Court's ruling only goes so far as the Federal claims and the Michigan State claim on the first to file bar. And also, our argument for reaching beyond that in this Court's review of that ruling comes from cases that this Court has decided, like Greg Draeger, like Ostrensky, probably mispronounced that, my apologies, where in review of a motion to dismiss, this Court is entitled to affirm the ruling made by the District Court on any ground urged in the motion to dismiss that fairly appears from the record. On the State claims, in particular, of fraud, there are two allegations only in the complaint that relate to Mr. Carson's supposed knowledge about claims outside of Pennsylvania. Paragraph 9 and paragraph 30 indicate that his knowledge of what is out of State, not in Pennsylvania, is based on information and belief. Well, why would we get into any of that? We don't know what any of these 20-some other States' rules are with respect to false claims. Why would we get into that at all? So, three answers to that. The first is that the controlling pleading rule here is 9B. And under Rule 9B, understanding, information, and belief is not the particularized knowledge that is sufficient to allege a fraud. Second, we've cited a case, Palmieri, from the District in Maryland, which indicates that the standards that apply under 9B are the same ones that apply to the State claims for the reason I said. And third, under anybody's conception of fraud, second-hand knowledge, information and belief, understanding is not particularized knowledge of the filing of false claims, which is a necessary element under any statute. But I suppose, even if you're right, a district court could, in its discretion, allow the plaintiff, in this case, to amend, or at least attempt to amend. So why should we take that on right now? That was going to be actually the third part of my response, Your Honor, which is there's no basis not to make that ruling now, because if he wanted to amend, faced with our motion to dismiss, he could have done it when he knew what our arguments were. He could have made a motion, filed a separate amended complaint. He didn't do that. After the district court ruled, he didn't do it either. And in this court, he has never said. Well, but the district court didn't rule on the pleading deficiency. But by the time his complaint was dismissed, he had the opportunity to say something or do something. He did nothing. In this court, he does not say that he can somehow get to first-hand knowledge of out-of-state fraud when he's affirmatively pled and admitted that that knowledge is only second-hand. That could never be improved by an amendment. So under those circumstances, under the proper application of Rule 9B, based on the Borgina case or the Marler case, those claims have to be dismissed. They'll never be improved by amendment. They'll never be improved by further briefing. Understanding and information and belief is not sufficient for fraud. So that means you'll win quickly on that argument at the district court if it goes back? Yes, but it also indicates that that's really an idle act or not necessary because we all know what the record is and we all know what his pleading says. So this court is in just as good a position to make that decision, and it should. That same analysis, by the way, extends to the retaliation claim, which is missing every essential element that's required to plead a claim of retaliation, starting with who made the decision to terminate him, followed by what knowledge they had when they did it, followed by no allegation of protected activity, and finally, by allegations, I might add, that specifically negate that any termination occurred for protective activity. So again... Well, if that's accurate, the district court could probably dismiss it without even having heard a hearing. Yes, but again, Your Honor, it seems to me that for efficiency's sake, with the matter being fully briefed, with the record being settled, with the arguments being fundamental to the claim, this court is in a good position to make that decision as the district court, has the capacity to do it under its standard of review, and things are not going to improve. So under those circumstances, consistent with this court's standard of review, it ought to take it all on and affirm the dismissal for the reasons given and the grounds raised in the trial court, which, as I said, this court does as a matter of review in the ordinary course with frequency. Unless the court has further questions, I would be prepared to submit. Thank you very much. Mr. Herlock, you have some time left in rebuttal. Opposing counsel says with respect to your state claims and your retaliation claim, it's just not going to get any better. With all due respect, opposing counsel is incorrect on that, Your Honor. There were a couple issues that were raised that I'd like to address. First off, the H claim with regards to the fraud with particularity or we're talking  Judge Shedd, did you have a question? Oh, I'm sorry. No, I didn't. Okay. No. I apologize. Mr. Carson's complaint has a great deal of information, and it's not on information and belief. He sets, now remember, there's a scheme going on here where three government-funded health care programs have been implicated, Medicare, Medicaid, and TRICARE. The scheme is applicable to all three. He sets forth the names of the individuals who engage in the improper conduct, paragraph 138. He talks about patients with the dates for delayed discharges, paragraph 141. He references the improper use of modalities, paragraphs 133, improper treatment, 134. The complaint is replete with specific examples that satisfy 9b in this particular instance. I just want to talk a little bit about the amendment issue, too, because this has come up before. First of all, Mr. Carson's complaint, while it had been filed in 2011, there's a great deal of hay that's been made as to the dates. Tell me which amendment you're talking about now. Yes, Your Honor. The complaint was amended twice. The very first time it was amended. What? Yes, sir. Mr. Carson's complaint. I apologize. Mr. Carson's complaint has been amended twice. The first time was to correct a Scrivener's error while it was still under seal because certain of the states were not contained in the caption. So in an abundance of caution, it was amended. The second time it was amended, and it was not amended while there was a motion to dismiss pending. The motion to dismiss obviously came after the second amended complaint, just so that we have the timeline down because I think it got a little confused. The amendment the second time was merely done because the case was coming out from under seal and certain of the defendants who had been named in the original complaint for Mr. Carson were no longer in play in the case because of the government's decision and consolidated complaint and intervention. And just going back to that complaint one more time if I could, it creates an interesting dynamic if Mr. Carson is suddenly told he has to go away and can't participate in this action if he's a party to the consolidated complaint, which is why the dismissal, if it happens on a first to file basis, is very important that there is some kind of caveat that his claims were subsumed into the government's complaint. Because if he's not there, what is the basis for those claims? We have a consolidated action in which Mr. Carson has remained a party. Those allegations that only Mr. Carson brought are. So why do we have to affirm that if that's the reality, that's what is before the district court? I don't think that, quite frankly, I don't think it should be affirmed on first to file for some of the arguments. No, no, no. I mean you're suggesting that we should say something about your client's continuing role in this litigation. But in a footnote. Yeah. In a footnote or something. Why? Because I think it's important for the clarification that we just alluded to by appellee's counsel as to what his status is and then going back to the district court. Why isn't that for the district court? I'm sorry? Why isn't that a matter for the district court? Because I believe, Your Honor, that to have that adjudicated or addressed at this point in the proceeding at the district court level, which has been ongoing since we were brought up here to the appellate division, is problematic for a number of reasons, though not the least of which it could call into doubt the consolidated complaint with regards to some of those allegations. And if it's going to be dismissed on a first to file, it's subsumed into the consolidated complaint. I think there, quite frankly, respectfully, I think that's something to consider. In addition to the leave to amend, and I know I'm running out of time and I want to be able to make sure I can hit most of these, I think it's also important, and Your Honors had hit on it, and I believe all three of you did. In the Carter case, which was also a case that was dismissed at the district court level for first to file issue, but there were other issues that were brought, much like there are here, public disclosure, original source, the whole nine yards. This court actually remanded as to the public disclosure issue. So it doesn't necessarily have to be something that's decided here at this level. As Your Honors have all indicated, it is something that could go back to the district court. And I see I'm out of time now, and I want to, again, ask that the decision of the district court be overturned on the first to file for the state claims, the H claim, and certain of those federal claims. And we would like to have Mr. Carson participate in the ongoing proceeding at the district court. And I thank you all for your time, and I submit the case. Thank you. Thank you, Mr. Horrocks. We'll be coming down to greet counsel before we move on to our next case.
judges: Dennis W. Shedd, G. Steven Agee, Albert Diaz